1
2
3
4
5
6

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| DAVID A. TRUE, | ) | No. C 11-05220 EJD (PR) |
| Petitioner, | ) ) | **ORDER DENYING PETITION FOR** |
| v. | ) ) ) | **WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY** |
| ROBERT M. OCHS, Warden, | ) ) | |
| Respondent. | ) ) ) | |
| _____ | ) | |

Petitioner has filed a <u>pro se</u> petition for a writ of habeas corpus under 28

U.S.C. § 2254 challenging his state conviction from Sonoma County Superior Court.

For the reasons set forth below, the Petition for a Writ of Habeas Corpus is

**DENIED**.

**BACKGROUND**

Petitioner was found guilty by a jury of receiving, concealing, or withholding

a stolen motor vehicle; knowingly altering a vehicle identification number; and a

misdemeanor violation of defacing the identifying numbers or marks of a motor

vehicle. On June 30, 2008, the trial court suspended Petitioner's sentence and

granted him probation on the condition that, <u>inter alia</u>, Petitioner serve five months

in jail. On appeal, the California Court of Appeal reversed the conviction for

United States District Court

For the Northern District of California

1   receiving, concealing, or withholding a stolen motor vehicle, and otherwise affirmed

2   the judgment.  The California Supreme Court denied review.  Petitioner filed the

3   instant federal habeas petition on June 25, 2011.

4                              **FACTUAL BACKGROUND**

5          The following facts are taken from the opinion of the California Court of

6   Appeal:

7          Guy Carlson lived and worked in Santa Rosa.  In 2002, he
       purchased a 100th Anniversary 2003 Harley-Davidson Soft Tail
8       Fatboy motorcycle.  The motorcycle was stolen from the parking lot
       of Carlson's employer on June 22, 2003.
9
           In early 2006, appellant contacted the Sonoma County CHP
10      office to request a VIN verification for a motorcycle he claimed to
       have built from salvaged parts.  He intended to raffle off the
11      motorcycle to benefit the CHP's Widows and Orphans Fund, a
       charity he had supported in the past, and he needed to register the
12      motorcycle with the Department of Motor Vehicles.  In California,
       the CHP can assign a VIN to a vehicle.
13
           CHP officers DeBois and Cincera inspected the motorcycle at
14      appellant's towing business in Petaluma, where they became
       suspicious upon noticing that the VIN number on the headstock had
15      been ground off.  The headstock is the area on the frame where the
       gas tank, headlight and forks are welded together, and is the location
16      where a VIN is stamped on a motorcycle.  The engine number
       appeared to have been altered, having been stamped in a manner that
17      was inconsistent with Harley-Davidson markings, and was reported
       "not on file."  Appellant told the officers that he had built the
18      motorcycle using parts from a number of 2003 motorcycles,
       including engine parts and a headstock he bought at a swap meet in
19      Oakland.

20          The case was turned over to the Sonoma County Auto Theft
       Task Force (Task Force) and the motorcycle was taken into custody.
21      The numbers on the motorcycle were not consistent with
       Harley-Davidson VINs; for example, the engine number had 14
22      characters rather than the 10 it should have had and the crank case
       number had a false identification number.  The part numbers on the
23      engine, transmission and frame appeared to match exactly, even
       though the numbers on a Harley Davidson will have numbers of
24      different lengths.  The VIN had been ground down and dye stamped,
       even though the VINs on Harley-Davidsons are pin-stamped. [FN1]
25      With the assistance of Peter Simet, a Harley-Davidson identification
       specialist familiar with confidential markings placed on
26      Harley-Davidson motorcycles for identification purposes, it was
       determined that the frame, engine and transmission of appellant's
27      motorcycle were taken from the motorcycle that was stolen from
       Guy Carlson in 2003.  Additionally, other parts such as the headlight,

28
       Order Denying Petition for Writ of Habeas Corpus; Denying Certificate of Appealability
       G:\PRO-SE\SJ.EJD\HC.11\05220True_denyHC.wpd

*[Left margin, vertical text:]* United States District Court  For the Northern District of California

1    fenders and gas tank were consistent with the stolen motorcycle.

2           FN1.  Pin stamping is done with a machine that puts the
            number or letter on the engine one pin dot at a time.  A dye
3           stamp rotates and stamps a complete number or letter onto the
            surface.
4
5           Appellant was interviewed by CHP Officer Monge (Monge)
     of the Task Force.  Appellant initially claimed to have bought the
6    engine and drive train for the motorcycle in Montana.  Later in the
     same interview, after Monge showed him a receipt from a "J. Davis"
7    in Odessa, Oregon, appellant said he had been driving through
     southern Oregon when he saw two 2003 Harley-Davidson Fatboys
8    sitting in a field with a for sale sign.  Appellant told Monge that after
     speaking to Jon Davis, the owner, he called his friend CHP Officer
9    Keeran and asked him to run a check to see if the motorcycles were
     stolen.  According to appellant, Keeran told him that one of them
10   came back "clear," so appellant bought the motorcycle along with
     some other parts.

11          Appellant also told Monge that he had purchased the frame of
     his motorcycle from Dan Barzee at Sonoma Custom Choppers.
12   Asked about the grind marks on the motorcycle frame, appellant
     acknowledged to Monge that he had removed some numbers by
13   painting over them.  Appellant told Monge that there had only been
     five or six numbers on the frame, and he had ground them off.  He
14   might have welded over them, but said he was not sure.  He
     explained that he had not liked the way the numbers looked.
15
            Officer Keeran denied that, around June 12, 2004, he had run
16   the identification numbers on a motorcycle.  An analysis of the
     state's computer system showed that no one had run the numbers
17   during the time period claimed by appellant.  Oregon law
     enforcement was unable to track down the "J. Davis" who had
18   allegedly sold appellant the motorcycle engine.  Dan Barzee denied
     selling appellant the motorcycle frame and maintained that his shop
19   had never sold Harley-Davidson parts.  The receipt that appellant
     claimed corresponded to his purchase of the frame did not look like a
20   receipt generated by Sonoma Custom Choppers.  Ted Green, a
     co-owner of Sonoma Custom Choppers, was told by appellant that
21   he had won the motorcycle in a poker game with some biker friends.

22          At trial, appellant maintained that he had purchased the
     engine of his motorcycle in southern Oregon from a man named "J.
23   Davis" and had purchased the frame from Dan Barzee.  He claimed
     the motorcycle frame had only a partial VIN when he purchased it
24   from Barzee.  He had removed the section of the frame with the
     remaining numbers intending to save it, but the piece with the
25   number had been lost.

26   People v. True, No. A121975, slip op. at 2-4 (Cal. Ct. App. April 20, 2010) (Ans.

27   Ex. 6).

28
     Order Denying Petition for Writ of Habeas Corpus; Denying Certificate of Appealability
     G:\PRO-SE\SJ.EJD\HC.11\05220True_denyHC.wpd
                                        3

**DISCUSSION**

I.     Standard of Review

This Court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).  The writ may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000).  The only definitive source of clearly established federal law under 28 U.S.C. § 2254(d) is in the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court decision. Williams, 529 U.S. at 412. While circuit law may be "persuasive authority" for purposes of determining whether a state court decision is an unreasonable application of Supreme Court precedent, only the Supreme Court's holdings are binding on the state courts and only those holdings need be "reasonably" applied. Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir.), overruled on other grounds by Lockyer v. Andrade, 538 U.S. 63 (2003).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from

United States District Court
For the Northern District of California

1    [the Supreme Court's] decisions but unreasonably applies that principle to the facts

2    of the prisoner's case." <u>Williams</u>, 529 U.S. at 413. "Under § 2254(d)(1)'s

3    'unreasonable application' clause, . . . a federal habeas court may not issue the writ

4    simply because that court concludes in its independent judgment that the relevant

5    state-court decision applied clearly established federal law erroneously or

6    incorrectly." <u>Williams</u>, 529 U.S. at 411. A federal habeas court making the

7    "unreasonable application" inquiry should ask whether the state court's application

8    of clearly established federal law was "objectively unreasonable." <u>Id.</u> at 409. The

9    federal habeas court must presume correct any determination of a factual issue made

10   by a state court unless the petitioner rebuts the presumption of correctness by clear

11   and convincing evidence. 28 U.S.C. § 2254(e)(1).

12        The state court decision to which Section 2254(d) applies is the "last

13   reasoned decision" of the state court. <u>See</u> <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 803-

14   04 (1991). When there is no reasoned opinion from the highest state court

15   considering a petitioner's claims, the court "looks through" to the last reasoned

16   opinion. <u>See id.</u> at 805. Here, that opinion is from the California Court of Appeal.

17   C.    <u>Claims and Analysis</u>

18        As grounds for federal habeas relief, Petitioner raises the following claims:

19   (1) prosecutorial misconduct, and (2) a violation of the Confrontation Clause.

20        1.    <u>Prosecutorial misconduct</u>

21         Petitioner's first claim is that the prosecutor committed misconduct by

22   shifting the burden of proof to the defense in his closing argument. Specifically,

23   Petitioner argues that the prosecutor stated that the reasonable doubt instruction

24   required the jury to determine whether there was a reasonable doubt of guilt based

25   solely on the evidence – rather than on any absence of evidence – that was

26   introduced at trial.

27        The Court of Appeal summarized and rejected this claim raised on direct

28

appeal:

> Appellant argues that the prosecutor misstated the burden of proof beyond a reasonable doubt during closing argument and that the trial court compounded the error by endorsing the prosecutor's statements. Although we agree that the challenged portion of the argument had the potential to be misleading if considered out of context, we conclude that any error was harmless.

> Appellant focuses on the following comments: "[Prosecutor]: I want to talk to you briefly about reasonable doubt. I don't want to spend a whole lot of time on it. I just want to give you the rest of the instruction and I've underlined the part that was not read, and it just said the evidence need not eliminate all possible doubt because everything in life is open to some possible or imaginary doubt. [¶] Now, what this means is when you're done hearing the evidence, you are going to hear argument, which is not evidence, you are going to go back in the jury room and you are going to deliberate and you will have to ask - each and every one of you will have to ask yourself do I have some sort of doubt in this case on any count that Mr. True is not guilty? Do I have a doubt? If the answer is no, then you are done. [¶] "If the answer is yes, then you move on to the next question which is is my doubt reasonable? Is what I am doubting a reasonable doubt? If the answer is no, then you are done. If the answer is yes, then you ask the third and final question, is the doubt I have something that is - comes from the evidence? Is it something that has been provided from the stand or from the evidence by the defense or by the People? [¶] You are not to speculate, you are not to guess and that is part of the instructions that the Court gave you. Don't make up your own defenses essentially is what it's saying. [¶] Use your common sense. That's what you are here for. You are members of our community. That's why you were chosen. Use your common sense. Do not leave your common sense at the door.

> "[Defense Counsel]: Your honor, I'm going to object. There is no third element that [the prosecutor] argues in the reasonable doubt instruction.

> "The Court: It's not an instruction.

> "[Defense Counsel]: I think he is misstating the law.

> "The Court: It's not an instruction, but it is fair argument. The objection is overruled."

> "A prosecutor's conduct violates the Fourteenth Amendment to the federal Constitution when it infects the trial with such unfairness as to make the conviction a denial of due process. Conduct by the prosecutor that does not render a criminal trial fundamentally unfair is prosecutorial misconduct under state law only if it involves the use of deceptive or reprehensible methods to attempt to persuade either the trial court or the jury. . . . [W]hen the claim focuses on comments made by the prosecutor before the jury, the question is whether there is any reasonable likelihood that the

Order Denying Petition for Writ of Habeas Corpus; Denying Certificate of Appealability
G:\PRO-SE\SJ.EJD\HC.11\05220True_denyHC.wpd

6

jury construed or applied any of the complained - of remarks in an objectionable fashion."  (People v. Morales (2001) 25 Cal. 4th 34, 44.)

A prosecutor may not suggest that a defendant has the burden of producing evidence or proving his innocence.  (See People v. Bradford (1997) 15 Cal. 4th 1229, 1340; People v. Young (2005) 34 Cal. 4th 1149, 1195-1196.)  In keeping with this rule, the prosecutor in this case should not have urged jurors who harbored a reasonable doubt as to guilt to ask themselves whether that doubt was supported by evidence.  Viewed in isolation, this comment tended to suggest that appellant had the burden of producing evidence to show a reasonable doubt as to his guilt.  (See People v. Hill (1998) 17 Cal. 4th 800, 831-832 (Hill) [though the issue was close, prosecutor's statement during closing argument that there must be "some evidence from which there is a reason for a doubt" was misconduct].)

In context, however, the prosecutor was making the larger and legally permissible point that the jury should base its verdict on the evidence rather than on speculation.  The jurors were instructed with CALCRIM No. 220, which properly defined the burden of proof beyond a reasonable doubt, and with CALCRIM No. 222, which advised them that they must base their decision only on the evidence presented and that the argument of counsel was not evidence. "Although the same standard is applicable for instructions by the court and comments by the prosecutor, it must be used with recognition of the differing nature and force of its two objects in the eyes of the jury.  We presume that jurors treat the court's instructions as a statement of the law by a judge, and the prosecutor's comments as words spoken by an advocate in an attempt to persuade."  (People v. Clair (1992) 2 Cal. 4th 629, 663, fn.8.)  Given the overall context of his remarks and the instructions given, the prosecutor's comments were harmless beyond a reasonable doubt.  (See People v. Katzenberger (2009) 178 Cal. App. 4th 1260, 1266, 1268-1269 [prosecutor's argument denigrating reasonable doubt standard by using power point presentation to compare it to jigsaw puzzle whose picture was recognizable with several pieces missing was harmless beyond a reasonable doubt where it was followed by court reading correct definition of reasonable doubt to the jury]; People v. Simpson (1954) 43 Cal. 2d 553, 565-566 [instruction defining reasonable doubt as "doubt which has some good reason for its existence arising out of the evidence" was potentially confusing, but reversal not required];contrast Hill, supra, 17 Cal. 4th at pp. 844-848 ["constant and outrageous" misconduct by prosecutor in "a pervasive campaign to mislead the jury on key legal points" might well have required reversal in and of itself had numerous errors committed by trial court not been prejudicial].)

We reject appellant's suggestion that the court endorsed the prosecutor's argument, thus elevating it to the status of a jury instruction, when it overruled the defense objection.  In explaining its ruling, the court specifically stated to counsel that the prosecutor's comments were not an instruction, but were "fair

United States District Court
For the Northern District of California

argument."  Characterizing the argument as "fair" did not adopt its content as a statement of the law for instructional purposes when the court specifically stated that it was not an instruction.  The jury was advised by CALCRIM No. 200 that it must follow the court's instructions rather than counsel's comments if it believed the two to be in conflict.

(Ans. Ex. 6 at 8-11.)

Prosecutorial misconduct is cognizable in federal habeas corpus.  The appropriate standard of review is the narrow one of due process and not the broad exercise of supervisory power.  Darden v. Wainwright, 477 U.S. 168, 181 (1986).  A defendant's due process rights are violated when a prosecutor's misconduct renders a trial "fundamentally unfair."  Id.; Smith v. Phillips, 455 U.S. 209, 219 (1982) ("the touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor").  Under Darden, the first issue is whether the prosecutor's remarks were improper; if so, the next question is whether such conduct infected the trial with unfairness.  Tan v. Runnels, 413 F.3d 1101, 1112 (9th Cir. 2005).

In addition, a prosecutor's mischaracterization of a jury instruction is less likely to render a trial fundamentally unfair than if the trial court issues the instruction erroneously:

[A]rguments of counsel generally carry less weight with a jury than do instructions from the court.  The former are not evidence, and are likely viewed as the statements of advocates; the latter, we have often recognized, are viewed as definitive and binding statements of the law.  Arguments of counsel which misstate the law are subject to objection and to correction by the court.  This is not to say that prosecutorial misrepresentations may never have a decisive effect on the jury, but only that they are not to be judged as having the same force as an instruction from the court.

Boyde v. California, 494 U.S. 370, 384-85 (1989) (citations omitted).

The state court's rejection of this claim was not unreasonable.  As the state court recognized, taking the prosecutor's statement in context, it was reasonable to conclude that the prosecutor was arguing that the jury should base its decision on the evidence rather than on speculation.  Further, the impact of any ambiguity of the

United States District Court

For the Northern District of California

prosecutor's statements was lessened by the legally correct jury instructions that were given on the definition of reasonable doubt (Ans. Ex. 2 Vol. 15, 24 RT 4612) and how the jury should deliberate (id., 24 RT 4610-4611); on the trial court's repeated advice that counsel's arguments were not evidence and, if in conflict with the instructions, were trumped by the instructions (id., 24 RT 4612-4613); and by the presumption that the jury is presumed to follow the instructions.  On this record, the state courts' rejection of this claim was not contrary to, or an unreasonable application of, Supreme Court precedent.  28 U.S.C. § 2254(d).

　　　　2.　　Confrontation Clause

　　　　Petitioner's second claim is that his right to confrontation was violated when the trial court permitted an investigating police officer to testify as to the substance of witnesses' answers to the officers' questions.

　　　　The Court of Appeal rejected this claim:

> Appellant contends the court erroneously admitted hearsay evidence of witness statements made to Oregon State Police Officer Lieutenant Nork during his investigation of the area in southern Oregon where appellant claimed to have purchased motorcycle parts from a "Jon Davis."  We conclude that any error was harmless.
>
> Nork had attempted to locate Davis by speaking with various people who lived in the area where appellant claimed to have made the purchase.  Over a hearsay objection by defense counsel, Nork was allowed to testify that the various witnesses he interviewed were unable to provide him with information useful to his investigation. He was also allowed to testify that he was never able to locate a Jon Davis who was connected with the sale of any Harley-Davidson motorcycle in the area, and that none of the three individuals listed as Jon or J. Davis in the area's telephone book was able to provide useful information.  Appellant argues that Nork's testimony was largely hearsay because it conveyed that what the various interviewees had told Nork.
>
> "'Hearsay evidence' is evidence of a statement that was made other than by a witness while testifying at the hearing and that is offered to prove the truth of the matter stated."  (Evid. Code, § 1200, subd. (a).)  "'Statement' means (a) oral or written verbal expression or (b) nonverbal conduct of a person intended by him as a substitute for oral or written verbal expression."  (Evid. Code, § 225.) Lieutenant Nork did not testify about any particular statement made by the people he interviewed, but the import of his testimony was that they told him they did not have any information about a Jon

Order Denying Petition for Writ of Habeas Corpus; Denying Certificate of Appealability
G:\PRO-SE\SJ.EJD\HC.11\05220True_denyHC.wpd

9

1   Davis or motorcycles sales in the area.  These implied statements of
2   the interviewees - which were relevant only if offered for their truth -
    suggested that no Jon Davis lived in the area and that appellant was
3   lying when he claimed to have purchased the motorcycle engine in
    Oregon.

4           This case is unlike People v. Zamudio (2008) 43 Cal. 4th 327,
5   cited by the People, in which a witness was allowed to testify that
    her mother, the murder victim, had never said anything about her
6   wallet being stolen prior to her killing by intruders who entered her
    home.  (Id. at p. 350.)  The Supreme Court concluded that the
7   victim's failure to say anything about the wallet was nonverbal
    conduct rather than a hearsay statement or assertion, and that it was
8   properly admitted to show that the wallet had been taken during a
    robbery when the victim was killed.  (Ibid.)  In the case before us, it
9   was apparent from the lieutenant's testimony that the people he
    interviewed made verbal statements; the question is whether the jury
10  would have necessarily gleaned the content of those statements from
    the testimony given.  (See People v. McNamara (1892) 94 Cal. 509,
11  514-515 [officer's testimony that he arrested defendant based on
    information from non-testifying witness was inadmissible hearsay];
12  Favre v. Henderson (5th Cir. 1972) 464 F.2d 359, 362 [implied
    hearsay where officer was improperly allowed to testify that he
13  arrested defendant based on information from unidentified
    confidential informants].)  We assume without deciding that Nork's
14  testimony regarding the interviewees' lack of useful information was
    hearsay not subject to any exception.

15          The erroneous introduction of hearsay at trial requires reversal
16  only if it is reasonably probable that appellant would have obtained a
    more favorable result had the evidence been excluded.  (People v.
17  Garcia (2008) 168 Cal. App. 4th 261, 292, citing People v. Watson
    (1956) 46 Cal. 2d 818, 836.)  There is no reasonable probability here.
18  Even without the testimony as to what Lieutenant Nork was told by
    various witnesses, the jury would have learned that he was unable to
19  locate a Jon Davis in the area where appellant claimed to have
    purchased the motorcycle engine.  More importantly, other evidence
20  established that both the engine and the frame of the motorcycle that
    appellant purportedly assembled came from a single motorcycle that
21  was stolen from Guy Carlson in Santa Rosa.
    Appellant claimed to have purchased the engine from Jon Davis in
22  Oregon and the frame from Sonoma Custom Choppers in Petaluma.
    It is highly improbable the jury would have believed that he
23  unwittingly purchased two major parts of the same stolen motorcycle
    from two separate sources located in different states.  Given the
24  strong inference that appellant obtained the frame and the engine
    from a single source, the jury was highly unlikely to credit his story
25  about the Oregon purchase, even if there had been no testimony
    suggesting Jon Davis could not be found.

26          We reject appellant's claim that the introduction of the
27  hearsay evidence must be assessed under the more stringent
    "harmless beyond a reasonable doubt" standard for federal
28  constitutional error because it violated his Confrontation Clause

United States District Court
For the Northern District of California

1    rights under <u>Crawford v. Washington</u> (2004) 541 U.S. 36, 68
     (<u>Crawford</u>).)  A <u>Crawford</u> violation occurs only when the
2    out-of-court statement was "testimonial" in nature.  (<u>Davis v.</u>
     <u>Washington</u> (2006) 547 U .S. 813, 821.)  This requires a showing
3    that the statement was made "under circumstances that imparted, to
     some degree, the formality and solemnity characteristic of
4    testimony."  (<u>People v. Cage</u> (2007) 40 Cal. 4th 965, 984.)
     Assuming Lieutenant Nork's testimony amounted to evidence of the
5    out-of-court statements by his interviewees, the record does not
     establish that those statements were made with the degree of
6    formality necessary to implicate <u>Crawford</u>.  An "informal statement
     made in an unstructured setting" generally will not be deemed
7    testimonial.  (<u>People v. Morgan</u> (2005) 125 Cal. App. 4th 935, 947.)

8    (Ans. Ex. 6 at 11-13.)

9           The Confrontation Clause of the Sixth Amendment provides that in criminal

10   cases the accused has the right to "be confronted with the witnesses against him."

11   U.S. Const. amend. VI.  The Confrontation Clause applies to all out-of-court

12   testimonial statements offered for the truth of the matter asserted, i.e., "testimonial

13   hearsay."  <u>See</u> <u>Crawford v. Washington</u>, 541 U.S. 36, 51 (2004).  Out-of-court

14   statements by witnesses that are testimonial hearsay are barred under the

15   Confrontation Clause unless (1) the witnesses are unavailable, and (2) the

16   defendants had a prior opportunity to cross-examine the witnesses.  <u>Id.</u> at 59.

17          When the primary purpose of taking an out-of-court statement is to create an

18   out-of-court substitute for trial testimony, the statement is testimonial hearsay and

19   <u>Crawford</u> applies.  <u>Michigan v. Bryant</u>, 131 S. Ct. 1143, 1155 (2011).  When that

20   was not the primary purpose, "the admissibility of a statement is the concern of state

21   and federal rules of evidence, not the Confrontation Clause."  <u>Id.</u>  In determining the

22   primary purpose of the statement, "standard rules of hearsay" will be relevant.  <u>Id.</u>

23   And the formality of the interrogation, or the lack of it, may inform the court's

24   inquiry as to its "primary purpose."  <u>Id.</u> at 1160.

25          <u>Crawford</u> noted that, at a minimum, "testimonial" included "prior testimony

26   at a preliminary hearing, before a grand jury, or at a former trial; and . . . police

27   interrogations."  541 U.S. at 68.  And, in <u>Davis</u>, the Supreme Court explained that

28

United States District Court

For the Northern District of California

"police interrogations" meant "interrogations solely directed at establishing the facts of a past crime, in order to identify (or provide evidence to convict) the perpetrator." Davis v. Washington, 547 U.S. 813, 826 (2006). "[T]he most important instances in which the Clause restricts the introduction of out-of-court statements are those in which state actors are involved in a formal, out-of-court interrogation of a witness to obtain evidence for trial." Bryant, 131 S. Ct. at 1155.

Here, the California Court of Appeal concluded that the statements were not testimonial because the circumstances did not demonstrate a sufficient degree of formality as implicated in Crawford. However, the Supreme Court has clarified that formality is but one factor in determining the "primary purpose" of statements. Bryant, 131 S. Ct. at 1160; see, e.g., Ocampo v. Vail, 649 F.3d 1098, 1108-10 (9th Cir. 2011) (recognizing that police testimony describing or outlining statements from a witness in lieu of the witness' live-testimony also constitutes testimonial statements subject to the Confrontation Clause).

Assuming without deciding that the statements about which the officer testified were "testimonial hearsay," and that the testimony violated the Confrontation Clause, this Court concludes that there was no prejudice. A Crawford claim, like all other Confrontation Clause claims, is subject to harmless error analysis. See United States v. McClain, 377 F.3d 219, 222 (2d Cir. 2004) (applying harmless error analysis to claim). In the context of reviewing a state court conviction under 28 U.S.C. § 2254, this of course means that relief is in order only if the admission at issue "had substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 623 (1993)). "In general, the inquiry into whether the constitutionally erroneous introduction of a piece of evidence had a substantial and injurious effect is guided by several factors: 'the importance of the testimony, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony, the

United States District Court
For the Northern District of California

1   extent of cross-examination permitted, and the overall strength of the prosecution's

2   case.'"  <u>Ocampo</u>, 649 F.3d at 1114.

3       Here, as the California Court of Appeal noted, even without the challenged

4   statements, Lieutenant Nork would still have been able to testify that during his

5   investigation, he was unable to find any "Jon Davis" in the area where Petitioner

6   claimed he bought the motorcycle engine.  Further, a Harley-Davidson identification

7   specialist opined that the frame, engine, and transmission of Petitioner's motorcycle

8   were taken from a single motorcycle, and specifically, from the motorcycle which

9   was stolen from Guy Carlson.  In addition, Petitioner's statements were inconsistent

10  with the expert's testimony, and Petitioner's claims that (1) he asked Officer Keeran

11  to run a check the alleged motorcycle, and (2) he bought the motorcycle frame from

12  Dan Barzee and Sonoma Custom Choppers were both refuted by Officer Keeran and

13  Dan Barzee.  Finally, defense counsel's cross-examination of Lieutenant Nork

14  neutralized Lieutenant Nork's testimony by allowing him to testify that Lieutenant

15  Nork has conducted previous searches where he has not located suspects; there had

16  been problems with trespassers in the area; and Lieutenant Nork did not ask any of

17  the individuals named "Davis" whether they had stolen a motorcycle.  Based on

18  strength of the prosecution's case, and defense counsel's minimization of the

19  challenged testimony, the Court concludes that the admitted testimony did not have

20  a substantial or injurious effect on the verdict.  Accordingly, the state court's

21  rejection of this claim was not contrary to, or an unreasonable application of, clearly

22  established Supreme Court law.  28 U.S.C. § 2254(d).

23                          **CONCLUSION**

24      After a careful review of the record and pertinent law, the Court concludes

25  that the Petition for a Writ of Habeas Corpus must be **DENIED**.

26      Further, a Certificate of Appealability is **DENIED**.  <u>See</u> Rule 11(a) of the

27  Rules Governing Section 2254 Cases.  Petitioner has not made "a substantial

28

United States District Court
For the Northern District of California

Order Denying Petition for Writ of Habeas Corpus; Denying Certificate of Appealability
G:\PRO-SE\SJ.EJD\HC.11\05220True_denyHC.wpd

showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  Nor has

Petitioner demonstrated that "reasonable jurists would find the district court's

assessment of the constitutional claims debatable or wrong."  <u>Slack v. McDaniel</u>,

529 U.S. 473, 484 (2000).

      The Clerk shall terminate any pending motions, enter judgment in favor of

Respondent, and close the file.

DATED: _____4/29/2013_____



EDWARD J. DAVILA
United States District Judge

United States District Court<br>For the Northern District of California

Order Denying Petition for Writ of Habeas Corpus; Denying Certificate of Appealability
G:\PRO-SE\SJ.EJD\HC.11\05220True_denyHC.wpd

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

DAVID A. TRUE,

                Plaintiff,

   v.

ROBERT M. OCHS et al,

                Defendant.

_____/

Case Number: CV11-05220 EJD

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on _____4/30/2013_____, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

David A. True
Sonoma County Probation Department
P. O. Box 11719
Santa Rosa, CA 95406

Dated: _____4/30/2013_____

                                  Richard W. Wieking, Clerk
                      /s/  By: Elizabeth Garcia, Deputy Clerk